**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**

CASE NO.

JOEL MEDGEBOW, individually
and on behalf of all others
similarly situated

    Plaintiff,

vs.

CHECKERS DRIVE-IN RESTAURANTS
INC.,

    Defendant.

_____/

**CLASS ACTION COMPLAINT**

Plaintiff, JOEL MEDGEBOW (hereinafter "Plaintiff"), brings this class action under Rule 23 of the Federal Rules of Civil Procedure against CHECKERS DRIVE-IN RESTAURANTS INC., ("CHECKERS"), for its violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "the TCPA"), and the regulations promulgated thereunder. In support, Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of CHECKERS in negligently or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to himself and his own

acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

2. The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. Additionally, the FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C.A. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010)

4. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

6. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including the transmission of the subject unauthorized text advertisements.

7. The Court has personal jurisdiction over CHECKERS because it conducts business in this state, markets its services within this state, and has availed itself to the jurisdiction of the State of Florida by transmitting the subject unauthorized text advertisements to Plaintiff and Class Members in this state.

## PARTIES

8. Plaintiff's domicile is in Palm Beach County, Florida. Plaintiff is a citizen of the state of Florida.

9. Class Members are citizens of the state of Florida and throughout the United States.

10. CHECKERS is a Delaware corporation and has its headquarters located in Tampa, Florida. CHECKERS lists its principal address as 4300 West Cypress Street, Suite 600, Tampa, FL 33607. CHECKERS lists its registered agent as Corporation Service Company, located at 1201 Hays Street, Tallahassee, FL 32301.

11. CHECKERS is a fast food chain restaurant that owns and operates two brands: "Checkers" and "Rally's."

12. "Checkers" and "Rally's" are for all intents and purposes the same restaurant. CHECKERS operates under the brand name "Checkers" or "Rally's" depending on the location of the restaurant. "Rally's" restaurants are located primarily throughout the Midwest United States

and California, whereas "Checkers" restaurants are located primarily in the Southeast and Northeast United States.

13. Despite operating under different brand names, both restaurants have substantially the same menu, same branding, same architectural façade, same marketing and in many instances both restaurants identify both the "Checker's" and "Rally's" name simultaneously on paper products and in advertisements.

14. For example, in the unconsented text message advertisements at issue in this case, CHCKERS identified itself as "Checkers/Rally's"

15. CHECKERS uses a business model whereby it promotes specials and coupons at its restaurants via unsolicited text message advertisements.

16. CHECKERS, directly or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited text messages that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

17. At all times relevant, Plaintiff was a citizen of the State of Florida. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

18. CHECKERS is, and at all times mentioned herein, was a corporation and "persons," as defined by 47 U.S.C. § 153 (39).

19. At all times relevant CHECKERS conducted business in the State of Florida and in Broward County, within this judicial district.

20. CHECKERS utilizes bulk SPAM text messaging, or SMS marketing, to send unsolicited text messages, marketing and advertising CHECKERS' restaurants, including more than 20 unconsented text messages in December 2018 and January 2019.

21. CHECKERS refers to its text message advertising campaign as "Checkers and Rally's Marketing Alerts" and describes its text messages as "marketing messages". See https://www.checkers.com/sms/ (last viewed on January 17, 2019).

22. Even if Plaintiff had previously provided prior express consent to receive text message from Defendant, Plaintiff expressly and clearly revoked his consent to continue receiving text messages on December 5, 2018 and repeatedly thereafter.

23. Plaintiff expressly revoked consent to receive "mobile alerts" text messages by sending an "opt-out" message to Defendant. Plaintiff followed the opt-out instructions that Defendant provided in its text messages to revoke consent by texting "STOP" to Defendant.

24. At all material times, Defendant and/or Defendant's agent instructed Plaintiff and class members that they could "opt out" of the mobile alert campaign by "texting STOP, CANCEL or UNSUBSCRIBE to the company's short code." See https://www.fishbowl.com/mobile/optout.html (last viewed January 17, 2019).

25. All text messages which were sent by Defendant or on behalf of Defendant to Plaintiff on or after December 5, 2018, were sent without his consent.

26. Below are true and correct copies of several text message advertisements that Defendant sent to Plaintiff between December 5 and 7, 2018:







27. On or before December 5, 2018, Plaintiff texted "STOP" to Defendant's SMS short code 88001.

28. Defendant's mobile alert text messages instructed Plaintiff "TxtSTOP2stop".

29. Notwithstanding Defendant's unclear opt-out instructions, Plaintiff repeatedly texted "STOP" to Defendant's SMS short code 88001.

30. "STOP" is universally recognized by mobile message senders as an express revocation of consent to receive text messages.





31. As demonstrated by the sampling of text messages provided in the preceding paragraph, CHECKERS continues to send Plaintiff text message advertisements despite Plaintiff replying to several texts from CHECKERS with "STOP."

32. CHECKERS sent these unsolicited text messages to Plaintiff's cellular telephone using the SMS short code number "88001."

33. Through the unsolicited SPAM text messages, CHECKERS contacted Plaintiff several times on Plaintiff's cellular telephone regarding an unsolicited service via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

34. Upon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

35. Upon information and belief, this ATDS has the capacity to store numbers on a list and to dial numbers from a list without human intervention.

36. The telephone number CHECKERS called was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

37. This text message constituted a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

38. Plaintiff did not consent to receive the subjected text messages, including unsolicited text messages, to his cellular telephone, pursuant to 47 U.S.C. § 227.

39. The unsolicited text message by CHECKERS, or its agents, violated 47 U.S.C. § 227(b)(1).

40. CHECKERS is and was aware that it is placing unsolicited robocalls to Plaintiff and other consumers without their prior express consent.

41. CHECKERS is and was aware that it is placing unsolicited robocalls to Plaintiff and other consumers without their prior express written consent.

42. Plaintiff was damaged by CHECKERS' text messages. In addition to using Plaintiff's cellular data, his privacy was wrongfully invaded, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted robo-text messages forcing him to divert attention away from his work and other activities.

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this class action under rules 23(a) and 23(b)(2) & (b)(3) of the Federal Rules of Civil Procedure on behalf of itself and of a similarly situated "Class" or "Class Members" defined as:

> All subscribers within the United States (i) who were sent one or more text messages that they did not consent to receive within the four years prior to the filing of the Complaint, (ii) from Defendant and/or its agents, (iii) promoting Checkers or Rally's restaurants.
>
> Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

44. This action has been brought and may properly be maintained as a class action against CHECKERS pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

45. **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that CHECKERS' conduct consisted of a standardized SPAM text messaging campaign electronically sent to particular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class

Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

46. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through CHECKERS' records, including, but not limited to CHECKERS text and marketing records.

47. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

48. **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

   a. Whether, within the four years prior to the filing of this Complaint, CHECKERS or its agents sent any unsolicited text message/s (other than a message made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic dialing and/or SMS texting system to any telephone number assigned to a cellular phone service;

   b. How CHECKERS obtained the numbers of Class members;

   c. Whether the dialing system used to send the subject text messages is an Automatic Telephone Dialing System;

    d. Whether CHECKERS engaged in telemarketing when it sent the text messages which are the subject of this lawsuit;

    e. Whether the text messages sent to Plaintiff and Class Members violate the TCPA and its regulations;

    f. Whether CHECKERS willfully or knowingly violated the TCPA or the rules prescribed under it;

    g. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for CHECKERS' acts and conduct;

    h. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining CHECKERS from continuing to engage in its unlawful conduct; and

    i. Whether Plaintiff and the Class are entitled to any other relief.

49. One or more questions or issues of law and/or fact regarding CHECKERS' liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

50. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

51. Plaintiff and members of the Class each received at least one SPAM text advertisement, advertising CHECKERS coupons and special, which CHECKERS sent or caused to be sent to Plaintiff and the members of the Class.

52. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel,

who are competent and experienced in litigation in the federal courts, TCPA litigation and class action litigation.

53.     **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against CHECKERS by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

54.     **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because CHECKERS has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole.  Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent D CHECKERS'

ongoing violations of the TCPA, and to order CHECKERS to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted text messages.

## COUNT I
## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227(b)

55. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 54 of this Complaint as though fully stated herein.

56. The foregoing acts and omissions of CHECKERS constitutes numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

57. As a result of CHECKERS' negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

58. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against CHECKERS, as set forth in the Prayer for Relief below.

## COUNT II
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227(b)

59. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 54 of this Complaint as though fully stated herein.

60. The foregoing acts and omissions of CHECKERS constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(b).

61. As a result of CHECKERS' knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and The Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

62. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against CHECKERS, as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against CHECKERS for:

a. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys as Class counsel;

b. Statutory damages of $500 per text;

c. Willful damages at $1,500 per text;

d. A declaration that CHECKERS' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

e. An injunction prohibiting CHECKERS from using an automatic telephone dialing system to text numbers assigned to cellular telephones without the prior express written consent of the called party;

f. Reasonable attorney's fees and costs; and

g. Such further and other relief as this Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts.

Dated: January 23, 2019  Respectfully submitted,

*s/ Joshua H. Eggnatz*
Seth M. Lehrman, Esq. (Fla. Bar No.: 132896)
E-mail: Seth@epllc.com
**EDWARDS POTTINGER, LLC**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Tel: (954) 524-2820
Facsimile: (954) 524-2822

Joshua H. Eggnatz, Esq. (Fla. Bar No.: 0067926)
E-mail: JEggnatz@JusticeEarned.com
Michael J. Pascucci, Esq. (Fla. Bar No.: 0083397)
E-mail: MPascucci@JusticeEarned.com
**EGGNATZ | PASCUCCI**
5400 S. University Drive, Ste. 417
Davie, FL 33328
Tel: (954) 889-3359
Facsimile: (954) 889-5913

*Attorneys for Plaintiff*