**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:19-cv-80090-BLOOM/Reinhart**

JOEL MEDGEBOW, individually
and on behalf of all others
similarly situated

    Plaintiff,

vs.

CHECKERS DRIVE-IN RESTAURANTS
INC.,

    Defendant.
_____/

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

    Plaintiff Joel Medgebow initiated this action against Checkers Drive-In Restaurants, Inc. ("Checkers" or "Defendant") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Notice has been provided to the Settlement Class pursuant to the Order Granting Preliminary Approval, and the Claim and Objection Deadlines have passed. Plaintiff and Class Counsel now seek Final Approval of the Settlement on behalf of consumers who, like Plaintiff, were allegedly sent text messages from Checkers after revoking their consent.

### I.   INTRODUCTION

    Between approximately January 28, 2018 and January 27, 2019, Plaintiff and each Settlement Class Member allegedly revoked their consent to receive text messages from Checkers [DE 8, para. 2]. Thereafter, during the same approximately one-year period, Checkers allegedly sent or caused to be sent text messages to Plaintiff and Settlement Class Members, marketing and advertising Checkers' business, despite the revocation of consent that Plaintiff and each Settlement Class Member had expressed. *Id*.

    The settlement reached provides compensation for the alleged post-revocation text messages that were sent to Plaintiff and Settlement Class Members. The Agreement was negotiated over the course of a full day mediation, conducted by a well-respected mediator Jeffrey Grubman of JAMS, as well as several hard-fought pre- and post-mediation negotiation sessions.

Plaintiff and Class Counsel believe that the claims asserted in the Action have merit. However, taking into account the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation and any subsequent appeal, it is desirable that the Action be fully and finally settled pursuant to the terms and conditions set forth in the Agreement. Plaintiff and Class Counsel have concluded that it is in the best interests of the class to settle the Action.

The Agreement required Checkers to fund a settlement in the amount up to $3,461,850.00, from which it is required to pay $450.00 to Settlement Class members who submit a valid Claim, and potential awards of attorneys' fees and costs and a Service Award to the named Plaintiff, as well as injunctive relief.

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(a), Rule 23(b)(3) and Rule 23(e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys listed in paragraph I of the Agreement; (5) approve the Plaintiff's requested Service Award; (6) award Class Counsel attorneys' fees and reimbursement of certain expenses; and (7) enter Final Judgment dismissing the Action with prejudice.

## II.     MOTION FOR FINAL APPROVAL

### A.     Procedural History

On January 23, 2019, Plaintiff filed his original class action complaint against Checkers alleging that Checkers violated the Telephone Consumer Protection Act ("TCPA"), a federal privacy statute which affords consumers a private right of action, seeking statutory damages for the Class. [DE 1].

Following waiver of service, Plaintiff and Checkers voluntarily exchanged information and informal discovery and agreed to an early mediation before Jeffrey Grubman of JAMS in Miami, Florida on April 18, 2019. To conserve resources while the Parties explored resolution and prepared for mediation, Plaintiff and Checkers filed a Joint Motion to Stay Proceedings Pending Mediation on March 15, 2019. [DE 6]. The Court stayed the case until April 22, 2019, ordered Checkers to file its Answer by April 29, 2019, and ordered the parties to file their Joint Scheduling Report by May 6, 2019. [DE 7].

The Parties attended mediation as scheduled on April 18, 2019. A settlement was reached in principle and the parties later drafted a term sheet memorializing the basic settlement terms. The

other essential terms of the Agreement were negotiated over the course of month following mediation. While exchanging informal discovery, it was learned that the class of individuals similarly situated to Plaintiff consisted of those who allegedly expressly revoked consent during the limited time period of January 28, 2018 to January 27, 2019, yet they all allegedly continued to be sent multiple unwanted text advertisements during that same approximate one-year period. Accordingly, following mediation, Plaintiff filed his Amended Complaint to narrow and more clearly define the class definition based on the facts that were discovered. [DE 8].

On May 22, 2019, Plaintiff filed his Unopposed Motion for Preliminary Approval [DE 15], which was granted on May 28, 2019. *See* Order Granting Preliminary Approval [DE 17]. On July 9, 2019, Kurtzman Carson Consultants LLC ("KCC"), the Settlement Administrator, disseminated Class Notice in accordance with the Court approved notice plan. On July 29, 2019, Plaintiff filed his Application for Service Award, Attorneys' Fees, And Costs [DE 19]. The Claim Submission deadline and Objection/Opt-Out deadline was August 13, 2019.

### B.     Summary of the Settlement

The Settlement terms are detailed in the Agreement. *See* Settlement Agreement [DE 15-1]. The following is a summary of its material terms.

#### 1.     *The Settlement Class*

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> All persons in the United States (i) identified in the Settlement Class List (ii) who between January 28, 2018 and the date of preliminary approval (the "Class Period"), attempted to unsubscribe from receiving text messages from Checkers' short code 88001, by texting "stop," "cancel," "unsubscribe," "end," "quit," "optout," "opt out," "remove," "cancelar," "arret," or "arrette" (or any variation thereof) and were subsequently sent text message advertisements or promotions from Checkers to their cellular telephone and did not re-subscribe to receive text messages.

Agreement at I.GG.

#### 2.     *Monetary Relief*

The Settlement requires Defendant to make available up to $3,461,850.00 for the benefit of the Settlement Class. In order to receive a portion of the Settlement Fund, Settlement Class members were required to complete a Claim Form.

Direct notice was provided by U.S. Mail (and e-mailed if e-mail was provided by a Settlement Class Member) and Claim Forms were available at the Settlement Website. Each Settlement Class member who submitted a valid Claim Form shall receive a cash Claim Settlement Payment in the amount of $450.00.

The Claim Submission deadline was August 13, 2019. Five hundred twenty (520) timely valid claims were submitted. *See* Declaration of Jeremy Neville on behalf of KCC, at ¶2, as attached hereto as **Exhibit A.**

### 3.   *Class Release*

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Defendant from claims related to the subject matter of the Action. The detailed release language is found in Section V of the Agreement.

### 4.   *Settlement Notice*

The Notice Program was designed to provide the best notice practicable and was tailored to use the information Defendant had available about Settlement Class members. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the settlement, Class Counsel's Attorneys' Fee application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. *See* Neville Decl. at ¶3-6; *see also* Declaration of Joshua Eggnatz ("Eggnatz Decl.") [DE 19-1]. The Notices and Notice Program constituted sufficient notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

The Notice Program was implemented and carried out in accordance with the Order Granting Preliminary Approval and the terms of the Agreement. *See id*.

### 1.   *Service Award, Attorneys' Fees and Costs*

Class Counsel petitioned for a Service Award of $5,000 for the Class Representative. Agreement at II.D.2. Class Counsel also petitioned for attorneys' fees of up to thirty percent (30%) of the Settlement Fund, plus expenses not to exceed Fifteen Thousand Dollars ($15,000.00). Agreement, II.D.1. Plaintiffs Application for Service Award, Attorneys' Fees, and Costs was filed and posted to the Settlement Website on July 29, 2019. *See* [DE 19].

### C.     Argument

Court approval is required for settlement of a class action. FED. R. CIV. P. 23(e). Federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

#### 1.     *Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights*.

The Notice Program consisted of: (1) direct mail postcard notice, and by e-mail if provided, ("Mailed Notice") to each Settlement Class member; and (2) a "Long-Form" notice with more detail than the direct mail notice, which has been available on the Settlement Website and via mail upon request. *See* Neville Decl.

Each facet of the Notice Program was timely and properly accomplished. The Notice Administrator received data from Defendant that identified a combination of names, cellular telephone numbers, and/or e-mails, and was able to identify mailing information for 6,476 Settlement Class members. Neville Decl. at ¶ 2. The Notice Administrator delivered direct notice to 6,476 identified class members' postal addresses and 600 identified email addresses. *Id.* Prior to mailing the postcards the Administrator ran them through the National Change of Address Database. *Id.* The Notice Administrator performed follow up research to attempt locate correct addresses for any undeliverable Mail Notice so it could re-mail postcards to Settlement Class members whose initial postcard notices were returned by the postal service prior to the Claims Deadline. *Id.* at ¶¶ 2, 9.

The Notice Administrator also established the Settlement Website, www.cdirsettlement.com, which went live on July 9, 2019. Neville Decl. at ¶ 3. The Long Form

Notice, along with other key pleadings, have been available on the Settlement Website and upon request to the Settlement Administrator, to enable Settlement Class members to obtain detailed information about the Action and the Settlement. *Id*.  In addition, a toll-free number was established. *Id*. at ¶ 3.  By calling, Settlement Class members are able listen to answers to frequently asked questions and speak with a staffed trained specialist. *Id*. at ¶ 6.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d at 1104-05.  The Notice, among other things, defined the Settlement Class, described the release provided to Defendant under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class members that a final judgment would bind them unless they opted-out and told them where they could get more information. Further, the Notice described Class Counsel's intention to seek attorneys' fees of up to 30% of the Settlement Fund, plus litigation expenses, and a Service Award for the Class Representative.  Hence, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).

The Settlement Administrator has received no requests for exclusion and ***no objections*** to the Settlement had been filed. Neville Decl. at ¶ 3.

> **2.    *The Settlement Should Be Approved as Fair, Adequate and Reasonable*.**

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984).  A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig*., MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)).  Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal,

nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified <u>six factors</u> to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of the plaintiffs' success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate and reasonable.

### a. The Settlement Was the Result of Arm's-Length Negotiations with the Assistance of an Experienced Mediator.

Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations. Class Counsel and Defendant engaged in a formal mediation, as well as several pre and post mediation informal settlement negotiations, all overseen by an experienced and well-respected mediator. All negotiations were arm's-length and extensive. S*ee Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); Eggnatz Decl. ¶ 4.

### b. The Settlement Will Avert Years of Complex and Expensive Litigation.

The claims and defenses here are complex. Recovery by any means other than settlement would require additional years of litigation. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation

may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").

In contrast, the Settlement provides immediate and substantial monetary benefits to the Settlement Class. Where unnecessary additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma American Express Co.,* 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (quoting *In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D.La.1993)); *See also Perez*, 501 F. Supp. 2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.").

Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class.

                **c.**        **The Facts Are Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.**

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement with the benefit of targeted informal party and non-party discovery. Eggnatz Decl. ¶ 5. [DE 19-1]. Specifically, Class Counsel obtained information about the dialing system used and the circumstances that lead to the transmission of the subject text messages. Class Counsel also obtained documents evidencing the content and number of texts transmitted. Class Counsel also spent considerable time researching Defendant's numerous defenses. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate with the strengths and weaknesses of Plaintiff's claims and Defendant's defenses, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis. *Id*.

### d. Plaintiff and the Class Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *Domestic Air*, 148 F.R.D. at 314. Where success at trial is not certain for plaintiffs, this factor weighs in favor of approving the settlement. *See Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063-MARTINE, 2009 WL 9054828, at *4 (S.D. Fla. Jan. 20, 2009). Class Counsel believes that Plaintiff had a strong case against Defendant. Even so, Class Counsel are mindful that Defendant advanced significant defenses that would have been required to overcome in the absence of the Settlement. Plaintiff faced significant litigation risks. Plaintiff bears the burden of proving that the dialing system used to send the subject text messages is an automatic telephone dialing system ("ATDS"). Defendant denies that the subject text messages were sent with an ATDS. Plaintiff contends that a system is an ATDS if it dials numbers from a list without human intervention. *See e.g.*, *Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1223 (S.D. Fla. 2014) (Finding that a system which dials numbers from a preprogrammed list without human intervention is an ATDS). Defendant disagrees with this legal view—which is also an issue currently pending before the Eleventh Circuit, *see Glasser v. Hilton Grand Vacations*, No. 18-14499—and disputes whether the system used meets this definition in any event. If the ATDS issue were reached in this case, Plaintiff would seek to show that the system dialed numbers stored on a list without human intervention and that this system is therefore an ATDS. However, if the Court found that the dialing system is not an ATDS, then Plaintiff and the class would recover nothing. Defendant was prepared to vigorously litigate the ATDS and other issues, including class certification.

This Action involved several major litigation risks that loomed in the absence of settlement including, but not limited to, trial, as well as appellate review following a verdict. Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. The Defendant's inability to pay a full potential class-wide judgment is also an important factor in favor of settlement. The uncertainties and delays from this process would have been significant. Eggnatz Decl. ¶¶ 7-10. [DE 15-1]

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement represents a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible

that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

> e. **The Benefits Provided by the Settlement are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.**

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*. As in most litigation, "[t]he range of potential recovery spans from a finding of non-liability through varying levels of injunctive relief, in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007) (citing *Lipuma v. American Exprress Co.,* 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005*)*, (internal quotation omitted). However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp. 2d at 1326

Here, Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. Each Settlement Class Claimant who opted to participate in the settlement will receive $450.00. Pursuant to the TCPA, each injured Settlement Class member could have received $500.00 for each non-willful violative message received upon a successful verdict at trial, but such a result was very uncertain.

This Settlement provides an extremely fair and reasonable recovery to Settlement Class members when considering Defendant's defenses, as well as the challenging, unpredictable path of litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts. Given the ranges of typical individual recovery to settlement class members in other TCPA cases, the settlement benefit to Class Members here is significant.[1]

---

1. The majority of the approved TCPA class action settlements that provided cash or merchandise to class members less than $100. *See e.g. Spillman v. RPM Pizza, LLC*, Case No. 3:10-cv-00349 (M.D. Louisiana)(DE 244, 245)($15 recovery per claimant); *Desai v. ADT Security Systems*, Case No. 1:11-cv-01925 (N.D. Illinois)(DE 240, 243) ($47 recovery per claimant);

    **f.**  **Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval.**

  Class Counsel strongly endorse the Settlement. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

  There has been no opposition to the Settlement, as not a single objection was filed. This is another indication that the Settlement Class is clearly satisfied with the Settlement. Even if there were some objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002). *See also Lipuma*, 406 F. Supp. 2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-0986, 2006 WL 1132371, at *13 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant

---

*Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv-04030 (N.D. Illinois)(DE 74) ($28.13 recovery per claimant); *Paldo Sign and Display Company v. Topsail Sportswear*, Case No. 1:08-cv-05959 (N.D. Illinois)(DE 116) ($42 recovery per fax); *Adams v. AllianceOne Receivables Management, Inc.*, 3:08-cv-00248 (S.D. California) ($40 recovery per claimant)(DE 116, 137; *Agne v. Papa John's International, et al.*, 2:10-cv-01139 (W.D. Washington)(DE 389) ($50 recovery plus $13 merchandise per claimant); *Bellows v. NCO Financial Systems, Inc.*, 3:07-cv-01413 (S.D. California)(DE 38 at 6) ($70 recovery per claimant); *Clark v. Payless ShoeSource, Inc.*, 2:09-cv-00915 (W.D. Wash.)(DE 61 at 3; 72) ($10 merchandise certificate per claimant); *Cubbage v. The Talbots, Inc. et al.*, 2:09-cv-00911 (W.D. Wash.)(DE 114, ¶ 11) ($40 or $80 merchandise certificate per claimant; *Hovila v. Tween Brands, Inc.*, 2:09-cv-00491 (W.D. Wash.)(DE 12, ¶ 12) ($20 or $45 merchandise certificate); *In re Jiffy Lube International, Inc. Text Spam Litig.*, 3:11-MD-02261 (S.D. Cal.)(DEs 90-1 at 7-8; 97) ($15); *Kazemi v. Payless ShoeSource, Inc. et al.*, 3:09-cv-05142 (N.D. Cal.)(DE 94, ¶ 10) ($15 merchandise certificate); *Kwan v. Clearwire Corp.*, 2:09-cv-01392 (W.D. Wash.)(DEs 201) ($53 per call); *Lemieux v. Global Credit & Collection Corp.*, 3:08-cv-01012 (S.D. Cal.)(DE 46, at 4) ($70 recovery per claimant); *Malta v. Freddie Mac & Wells Fargo Home Mortgage*, 3:10-cv-01290 (S.D. Cal.)(DE 91 at 5) ($85 recovery per claimant); *Sarabi v. Weltman, Weinberg & Reis Co.*, 3:10-cv-01777 (S.D. Cal.)(DE 42 at 6) (48 recovery per claimant); *Steinfeld, et al. v. Discover Financial Services, et al.*, 3:12-cv-01118 (N.D. Cal.)(DE 65 at 17) ($47 recovery per claimant); and *Wojcik v. Buffalo Bills, Inc.*, 8:12-cv-02414 (M.D. Fla.)(DE 77 at 5) ($58-$75 recovery per claimant).

number of objections that the majority of the Class found [the settlement agreement] reasonable and fair.").

### 3. *The Court Should Certify the Settlement Class*.

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### *Standing*

"In order to establish Article III standing to bring a suit, a plaintiff has the burden to show that he '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) is likely to be redressed by a favorable judicial decision.'" *Mohamed v. Off Lease Only, Inc.*, No. 15-23352-Civ-COOKE/TORRES, 2017 U.S. Dist. LEXIS 41023, at *2-3 (S.D. Fla. Mar. 22, 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). "A plaintiff attains an injury in fact when he 'suffer[s] an invasion of a legally protected interest that is concrete and particularized[,] and actual or imminent, not conjectural or hypothetical.'" *Id.* at *3.

The Eleventh Circuit has noted that "a plaintiff is not required to demonstrate the merits of his case in order to establish his standing to sue." *Muransky v. Godiva Chocolatier, Inc.*, Nos. 16-16486, 16-16783, 2019 U.S. App. LEXIS 11630, at *12 (11th Cir. Apr. 22, 2019) (citing *Pedro v Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017)). Even after "*Spokeo* as before, 'intangible' injuries…may satisfy Article III's concreteness requirement," and that "*Spokeo* made no change to the rule that 'a small injury, 'an identifiable trifle,' is sufficient to confer standing.'" *Muransky*, 2019 U.S. App. LEXIS 11630, at *15 (citing *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973))). Ultimately, "where Congress elevates the risk of harm to a concrete interest to the status of a concrete injury, the risk need be no more than an 'identifiable trifle' to be concrete." *Muransky*, 2019 U.S. App. LEXIS 11630, at *117 (quoting *Billups*, 554 F.3d at 1351).

Here, Plaintiff has standing under the TCPA to bring his claim. The TCPA is a "consumer protection statute[] that confer[s] on [P]laintiff[] the right to be free from certain harassing and privacy-invading conduct." *Manno v. Healthcare Rev. Recovery Grp., LLC*, 289 F.R.D. 674, 682

(S.D. Fla. 2013); *see also Gamble v. New Eng. Auto Fin.*, 735 F. App'x 664, 666 (11th Cir. 2018) ("Congress provided [Plaintiff] that right through the TCPA, and she had that right (and could assert it through litigation against [Defendant]…") (citing 47 U.S.C. § 227). This includes being free from "certain prohibited calls." *Tillman v. Ally Fin. Inc.*, No. 2:16-cv-313-FtM-99CM, 2017 U.S. Dist. LEXIS 71919, at *16 (M.D. Fla. May 11, 2017) (finding that receipt of such prohibited calls "is an injury that Congress has elevated to the status of a legally cognizable injury through the TCPA"); *Manno*, 289 F.R.D. at 682 (holding "[plaintiff] has alleged [d]efendants' conduct violated [the TCPA], and that is enough to confer upon him standing under Article III").

The injury alleged by Plaintiff here is particularized. Indeed, Plaintiff received multiple prohibited text message advertisements from Defendant on his cell phone, and, thus, he was affected in a "personal and individual way." *Mohamed*, 2017 U.S. Dist. LEXIS 41023, at *3. This injury, even if construed as intangible, is also concrete. *Id.* As held by the Eleventh Circuit, "'where a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights.'" *Eisenband v. Schumacher Auto., Inc.*, No. 18-cv-80911, 2018 U.S. Dist. LEXIS 181272, at *3 (S.D. Fla. Oct. 22, 2018) (Bloom, J.) (quoting *Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC*, 858 F.3d 1362, 1366 (11th Cir. 2017) (quoting *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015))). "The Eleventh Circuit, pre- and post-*Spokeo*, has held that the TCPA 'creates such a cognizable right.'" *Id.* (citing *Palm Beach Golf*, 781 F.3d at 1251).

### *Certification under Rule 23(a)*

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy. For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 7,693 individuals, and joinder of all such persons is impracticable. *See* Fed. R.

Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact – centering on Defendant's text messaging program – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Plaintiff is typical of absent Settlement Class members because he received text messages after allegedly making a stop request and suffered the same injuries as them and because they will all benefit from the relief achieved.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests.  Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).  Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member.  The necessity for the court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

Based on the foregoing, the Settlement is fair, adequate and reasonable.

## V.     CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as **Exhibit B**; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph I of the Agreement; (5) approve the requested Service Award in the amount of $5,000; (6) award Class Counsel attorneys' fees in the amount of 30% of the Settlement Fund, and award reimbursement of costs in the amount of $3,708.97; and (7) enter Final Judgment dismissing the Action with prejudice.

### **CERTIFICATE OF GOOD FAITH CONFERRAL**

The undersigned attorney, in compliance with S.D. Local Rule 7.1(a)(3), certifies that the movant has conferred with counsel for Defendant, and that Defendant does not oppose the relief requested in the instant motion.

Dated: September 9, 2019　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*/s/ Joshua H. Eggnatz*
　　　　　　　　　　　　　　　　　　　　　Joshua H. Eggnatz, Esq. (FBN 0067926)
　　　　　　　　　　　　　　　　　　　　　E-mail: JEggnatz@JusticeEarned.com
　　　　　　　　　　　　　　　　　　　　　Michael J. Pascucci, Esq. (FBN 0083397)
　　　　　　　　　　　　　　　　　　　　　E-mail: MPascucci@JusticeEarned.com
　　　　　　　　　　　　　　　　　　　　　**EGGNATZ | PASCUCCI**
　　　　　　　　　　　　　　　　　　　　　7450 Griffin Road. Suite 230
　　　　　　　　　　　　　　　　　　　　　Davie, FL 33314
　　　　　　　　　　　　　　　　　　　　　Telephone: 954-889-3359
　　　　　　　　　　　　　　　　　　　　　Facsimile: 954-889-5913

　　　　　　　　　　　　　　　　　　　　　Seth M. Lehrman (FBN 132896)
　　　　　　　　　　　　　　　　　　　　　E-mail: seth@epllc.com
　　　　　　　　　　　　　　　　　　　　　**EDWARDS POTTINGER LLC.**
　　　　　　　　　　　　　　　　　　　　　425 North Andrews Avenue, Suite 2
　　　　　　　　　　　　　　　　　　　　　Fort Lauderdale, FL 33301
　　　　　　　　　　　　　　　　　　　　　Telephone: 954-524-2820
　　　　　　　　　　　　　　　　　　　　　Facsimile: 954-524-2822

　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

　　　　I HEREBY CERTIFY that on September 9, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

　　　　　　　　　　　　　　　　　　　　　*/s/ Joshua H. Eggnatz*
　　　　　　　　　　　　　　　　　　　　　Joshua H. Eggnatz

## SERVICE LIST

David S. Almeida, Esq.
E-mail: dalmeida@beneschlaw.com
BENESCH LAW
71 South Wacker Drive
Suite 1900
Chicago, IL 60606
Telephone: (312) 212-4956

*Attorneys for Defendant*